In the Matter of MICHAEL E. REIBURN (Formerly MICHAEL E. REITZENBERG), an Attorney, Respondent.

First Department, November 15, 1935.

*Einar Chrystie*, for the petitioner.

*Walter A. Lynch* of counsel [*Thomas H. McManus* with him on the brief; *Walter A. Lynch*, attorney], for the respondent.

MARTIN, P. J.   The respondent was admitted to practice as an attorney and counselor at law in the State of New York at the October, 1915, term of the Appellate Division of the Supreme Court, Fourth Department, and has been engaged in practice as such attorney since his admission.

By the petition herein he is charged with professional misconduct in eight separate specifications.   The respondent answered, denying

the charges, and the matter was referred to an official referee. Hearings have been had resulting in a report by the referee finding respondent guilty of seven of said charges. The evidence sustains the findings of the referee.

The respondent converted to his own use the sum of thirteen thousand five hundred dollars, which he obtained from one Jacob Meadow upon the false representation that by reason of his political connections and his office of State Senator he could obtain advance information regarding the location of real property about to be acquired for public purposes and that large profits would be made by purchasing these properties and holding them until taken or acquired for public use. Said sum was obtained as follows: The respondent first obtained three hundred dollars from Meadow, and in about four months returned him four hundred dollars, representing that one hundred dollars was his share of the profits. Respondent shortly thereafter represented to Meadow that he had another similar proposition, and inquired if he would invest some money. Meadow gave him one thousand dollars, and in three or four months respondent returned said amount together with an alleged profit of three hundred dollars or four hundred dollars.

Respondent subsequently represented to Meadow that he had another transaction requiring a substantial amount and urged Meadow to contribute as much as he could raise. Meadow gave respondent seven thousand five hundred dollars. About three months later respondent informed Meadow that distribution would be made in a day or two, but that in the meantime another proposition had presented itself requiring immediate action in a substantial amount and asked Meadow how much he could raise. Meadow said he might raise six thousand dollars provided he could count on the promised distribution from the other proposition. Meadow gave respondent an additional six thousand dollars upon respondent's assurance that distribution would be made in a day or two. In each of the above instances, upon receiving money from Meadow, the respondent gave him his non-interest bearing note as evidence of its receipt. Upon receiving the last mentioned six thousand dollars, respondent went to Europe without returning to respondent the seven thousand five hundred dollars previously advanced or making any provision for the payment of the note given in connection therewith. Subsequent to the return of respondent from Europe and after the due date of the last mentioned note for six thousand dollars, Meadow was requested to attend a meeting of creditors of respondent, and on the same day was asked by respondent to call at his office. Upon doing so, respondent confessed to him that there never was any property bought or sold, or any profits, but that respondent had

been imposing upon his friends as he himself had been imposed upon by a former magistrate, Fleischman, who had induced respondent to intrust him with large sums of money obtained from clients and friends and then absconded with said funds. Respondent stated to Meadow that he had obtained money by the aforesaid representations not alone from him but from others, to return sums due his friends and clients, hoping in the meantime to raise enough money to get everything straightened out. Meadow was then requested to sign a creditor's agreement permitting repayment in installments.

The additional charges made and sustained by the evidence are as follows:

The respondent converted to his own use the sum of thirteen thousand seven hundred dollars received from one Maurice H. Lowenberg upon false and fraudulent representations that it could be profitably invested in real estate, and by following a course similar to that followed in the Meadow transactions, namely, by the repayment with a profit of two prior small contributions.

The respondent converted to his own use the sum of fifteen hundred dollars obtained by him from one Bernard Greenberg, upon false and fraudulent representations similar to those above set forth.

The respondent converted to his own use the sum of fifteen hundred dollars obtained from one Pietro LaScala upon similar false and fraudulent representations.

The respondent falsely stated to the committee on grievances of the petitioner that the moneys received from Meadow, Lowenberg, Greenberg and others were given by respondent to Samuel Fleischman, a member of the bar and former city magistrate, upon the representation that he had opportunities to buy city real estate that might be taken over for public improvements and that Fleischman disappeared with some ninety thousand dollars in July or August, 1924, and thereafter respondent was unable to locate him. The fact is that Fleischman left New York city in 1922, long before the receipt by respondent of the aforesaid money, and never received any part thereof.

The respondent obtained from one Jacob Price the sum of seven hundred dollars in return for his check, upon the false representation that there was sufficient money in his account to meet said check. The check was returned to Price unpaid because of lack of funds.

Michael Tobias brought an action against respondent for the recovery of the sum of seventeen hundred fifty dollars due on two promissory notes. The respondent assigned to Tobias, to the extent of one thousand dollars, all his right, title and interest to fees as special guardian in an estate pending in the Surrogate's Court

and for which he had made an application for an allowance. An allowance of one thousand six hundred seven dollars and eighty cents was made and paid to respondent on May 5, 1926. Respondent concealed the receipt thereof from Tobias and from the attorney for Tobias, and converted to his own use the one thousand dollars assigned to Tobias. Thereafter and on or about June 3, 1926, respondent paid to Tobias the sum of five hundred dollars.

This is an extraordinary case. There has been a prostitution of great natural ability, coupled with unusual opportunity for its constructive employment. The learned referee has aptly characterized the conduct of the respondent in the following statement:

" I am fully aware that if this report be approved by this honorable Court another tragic event will be written into the annals of the bar of this State. I should have been glad to report extenuating circumstances for the respondent's acts, but I cannot do it. If my strictures herein upon the respondent may appear at times harsh, they were forced upon me by his conduct. It is always a disheartening task to pass upon charges preferred against a member of the bar, and in this case it is all the more disagreeable as I was acquainted with the respondent through his appearance before me while I was on the bench and my impressions of him were favorable.

" The respondent is a man of exceptional ability. He is possessed of persuasive and ingratiating faculties. For six years he was a member of the State Legislature. His service there merited the approbation not only of his party but of independent bodies. The road for further professional and political distinction lay open before him. Then came his downfall, which resulted in disciplinary proceedings and his retirement from the city during several years. Time and again during the hearings he displayed his quickness of mind. He was ever on the alert. He was keen to sense embarrassing situations before he was confronted therewith, and anticipated them by voluntary statements. He had ready answers to meet every contingency, some plausible, often sophisticated but rarely convincing. His shrewdness and cunning can only be adequately gauged by a study of the transcript of his testimony. But even his extraordinary resourcefulness was unable to withstand the mass of damaging evidence piled up against him. In these circumstances it necessarily followed that he involved himself in inextricable contradictions and impossible explanations. I have pointed out some of them in this report. To refer to more or all of them would extend this report, perhaps already too long, to an inordinate length.

" The respondent calmly brands Meadow, Lowenberg, Greenberg, LaScala, Fleischman, Hamel and Winter as liars and perjurers. Does he really believe that all these men seek his professional death

and that by contrast he is the only honest man? Does he really believe that Meadow, Lowenberg and Greenberg — and to some extent LaScala — concocted similar tales for the purpose of ruining him? Does he really believe that his grotesque story that Fleischman disappeared from New York in 1924 and not in 1922 can be accepted? Does he really believe that his version in the Tobias and Price charges should be credited as against that of Winter and Hamel, backed up by unanswerable documentary evidence? He tried desperately to turn the Meadow, Lowenberg, Greenberg and LaScala transactions into innocent loans. They all knew the difference between loans and investments. The respondent emphasized the point that Lowenberg and Greenberg finally referred to them as loans. This does not aid the respondent. It was the only way that they could get at least part of their money back, and in view thereof their action is not surprising. Worthy of a better cause, he adhered with amazing tenacity to the disgraceful accusations against Fleischman. He glibly tried to minimize the effect of the evidence based upon the assignment in the Tobias charge, and upon the condition of his bank account in the Price charge. Instead of throwing himself upon the mercy of the Court, he has intensified his offenses by giving false testimony."

It is unnecessary to add to the clear statement made by the referee. He has concisely set forth the facts and reached a conclusion which could not be avoided when the evidence is fairly considered.

Respondent should be disbarred.

MERRELL, O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Respondent disbarred.